Paul J. MCLAUGHLIN and Lisa C. McLaughlin, Defendants Below, Appellants,

v.

BOARD OF ADJUSTMENT OF NEW CASTLE COUNTY, Ronald Fuller and Kristine Fuller, Jeffrey Martin and Valerie Martin, Plaintiffs Below, Appellees.

No. 15,2009.

Supreme Court of Delaware.

Submitted: Oct. 14, 2009.
Decided: Dec. 7, 2009.

Lisa C. McLaughlin, Phillips Goldman & Spence, P.A., Wilmington, DE, for appellants.

Jeffrey K. Martin, Martin & Associates, P.A., Wilmington, DE, for appellees.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice:

Paul and Lisa McLaughlin appeal from a Superior Court judgment affirming two decisions of the New Castle County Board of Adjustment granting area variances for two property owners.[1] The McLaughlins contend the Board incorrectly applied the analysis we established in *Board of Adjustment of New Castle County v. KwikCheck Realty, Inc*[2] and failed to consider the degree of and the need for the variances and the impact of the subdivisions. Because we find no error in the Board's application of the *Kwik–Check* factors or the Superior Court's judgment, we also AFFIRM.

## Factual Background and Procedural Background

### Fuller Application

On July 14, 2006, the Fullers requested a dimensional/area variance to support a three-lot subdivision of their 1.85–acre parcel, located in Sedgely Farms, Wilmington, Delaware.[3] Because of the unusual location of the property, two of the three proposed lots required variances. During the Board's hearing on August 24, 2006, the Fullers stated their intent to subdivide the property because Mrs. Fuller's multiple sclerosis had caused financial hardship. The Board considered a Recommendation Report by the Department of Land Use, reviewing and discussing the legal standards governing a Board's decision to grant a variance pursuant to 9 *Del. C.* § 1352 and *Kwik–Check*.[4]

The Department concluded that the variances would neither seriously affect the neighboring properties nor adversely affect the area, and that "the hardship as a result of a denial will outweigh the minimal likely effect on neighboring properties if the variance is granted." Despite opposition from neighbors, the Board granted the variances, subject to three conditions: (1) no further subdivision of the lot retained by the Fullers, (2) that the Fullers submit a comprehensive stormwater management plan for review by New Castle County, and (3) that the Fullers provide landscaping between the newly created lots and the adjoining property.

### Martin Application

On January 31, 2007, the Martins requested a dimensional/area variance to support the subdivision of their 2.35 acre-parcel, located at Sedgely Farms.[5] At the Board's hearing on April 12, 2007, Valerie Martin testified about the disrepair of her home and her intent to subdivide the property to help finance a new home. The Board considered the Recommendation Report by the Department, which favored

1. Ronald and Kristine Fuller and Jeffrey and Valerie Martin, respectively.

2. 389 A.2d 1289 (Del.1978).

3. The Fuller property is zoned NC–15, a classification requiring a minimum lot size of 15,000 square feet, frontage on a public street, 100 feet of lot width, 40 feet front and rear yard setbacks, and 12 feet side yard setback.

4. 389 A.2d 1289 (Del.1978).

5. The Martin property is also zoned NC–15, but does not have 100 feet of lot width.

granting the variances. On June 22, 2007, the Board granted the variances.

### Claims on Appeal

The McLaughlins petitioned the Superior Court for a writ of *certiorari* for both variances. The Superior Court issued a consolidated Opinion and Order affirming the Board's decisions in both cases. This appeal followed.

The gist of the McLaughlins' three assignments of error is that the Board misapplied the *Kwik–Check* factors. Particularly, they contend that under the *Kwik–Check* analysis, the Board may grant an area variance solely for economic reasons only if it finds that the variance is *minimal* and that the Board errs when it fails to consider and determine the extent of the requested variances.

Second, the McLaughlins claim *Kwik–Check* required the Board to consider the effects of the subdivisions on the community resulting from the variances, and that the Board misapplied *Kwik–Check* by considering only the variances' effect, and not the subdivisions' effects. Finally, the McLaughlins contend that because Fuller and Martin created the difficulties underlying their request for variances, the Board erred by finding simply that the Fullers and the Martins demonstrated "exceptional practical difficulties."

### Standard of Review

■ Upon review of a Zoning Board decision, we apply the same standard as applied by the Superior Court. We limit our review to correcting errors of law and determining whether substantial evidence exists to support the Board's findings of fact.[6] When sufficient evidence exists, we will not reweigh it and substitute our own judgment for that of the Board.[7]

### Discussion

We agree with the Superior Court's well-reasoned discussion of the McLaughlins' claims in *McLaughlin v. Board of Adjustment of New Castle County*, C.A. No. 07A–07–003, and find no error. Accordingly, while we affirm on the basis of the opinion below, we make these additional observations.

■ In their briefs, the McLaughlins contend that the Board may grant an area variance solely for economic reasons only if it finds that the variance is minimal. In *Kwik–Check*, we rejected a similar position advanced by the Board and observed that under the exceptional practical difficulty test "[a] practical difficulty is present where the requested dimensional change is minimal *and* the harm to the applicant if the variance is denied will be greater than the probable effect on neighboring properties if the variance is granted."[8]

Our statement, on which the McLaughlins rely, does not mandate that the Board make a separate analytic step when considering an "economically motivated" application for an area variance. Rather, our observation was a specific example of how the Board should consider the four factors, weighing the potential harm to the neighboring properties by granting the variance against the potential harm to the property

---

6. *Janaman v. New Castle County Bd. Of Adjustment*, 364 A.2d 1241, 1241 (Del.Super.1976), *aff'd*, 379 A.2d 1118 (Del.1977) (TABLE); *Cooch's Bridge Civic Ass'n v. Pencader Corp.*, 254 A.2d 608, 609–10 (Del.1969). *See* also *Sawers v. New Castle County Bd. Of Adjustment*, 550 A.2d 35 (TABLE), 1988 WL 117514 at *2 (Del. Oct. 26, 1988).

7. *Groves v. Bd. Of Adjustment of Sussex County*, 1987 WL 25469, at *1 (Del.Super.Nov. 10, 1987) (citing *Searles v. Darling*, 83 A.2d 96 (Del.1951)).

8. *Kwik–Check*, 389 A.2d at 1291. (emphasis added).

owner by denying it. Because the McLaughlins' first claim of error rests on an incorrect premise, it must fail.

■ The McLaughlins' next assignment of error—that the Board erred by failing to evaluate the effects of the subdivisions on the neighboring properties—raises a factual issue without regard to the record. Several concerns raised by opposing residents included adverse effect on property values, stormwater management, private nature of lots, and lot size in keeping with the community. For the Fuller variance, the record shows that the Board placed three conditions on its grant "to satisfy concerns voiced by Sedgely Farms residents."

Similarly, in its decision on the Martin application, the Board discussed the opposing neighbors' concerns and stated that the Martins would address the stormwater, drainage, and landscaping issues raised by the subdivisions. The record sufficiently demonstrates that the Board considered the effects of subdividing and recommended mechanisms to minimize any potential negative effects the variances had, and that these ultimate subdivisions might cause, to the community.

■ The McLaughlins third claim of legal error is that the Board misapplied the law because it could not properly find that the Fullers and the Martins showed "exceptional practical difficulties" because the Fullers and the Martins created those very difficulties. The McLaughlins rely on the principle that "[a] self-imposed condition or violation which gives rise to a form of self-imposed hardship is generally not such hardship as is sufficient to sustain a variance." [9] They contend that the Fullers

and the Martins "self-created" their need for the variances. Granting the variances would therefore "sanction[ ] or reward[ ] code violations, and thus, stimulate[e] their occurrence." [10]

This claim of error must fail because the variances remedied difficulties that were not self-created; rather, the Fullers' and the Martins' respective difficulties resulted from *inherent* and *pre-existing* characteristics of their properties that operate to preclude subdivisions that would otherwise be permitted. Particularly, the variances remedy the idiosyncratic location of the Fuller property at the end of a private driveway and the smaller lot width of the Martin property.

■ Assuming *arguendo* that the Fullers and the Martins created the difficulties that generated the need for variances, that alone would not suffice to deny the variances. "In Delaware, there is no *per se* bar against a variance for a self-imposed hardship." [11] The question is whether an applicant has adequately demonstrated that his difficulty justifies the grant of a variance.

*9 Del. C.* § 1352(a)(3) empowers the Board to grant variances "where, owing to special conditions or exceptional situation[s], a literal interpretation of the provisions of any zoning ordinance, code or regulation will result in ... exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code, or regulation shall be observed and substantial justice done." The special characteristics of the two subject properties were properly found to constitute "special conditions or exceptional situation[s]" creating the Fullers' and the Martins' difficulties.

9. *Janaman,* 364 A.2d at 1243.

10. *Id.*

11. *CCS Investors LLC v. Brown,* 977 A.2d 301, 314 (Del.2009) (reviewing the grant of a use variance).

## Conclusion

Because the Board did not err in its application of the *Kwik–Check* factors and its findings of fact were supported by substantial evidence, the judgment of the Superior Court is AFFIRMED.