SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

August 16, 2016

Richard E. Berl, Jr., Esquire
Berl & Fineberg, LLP
Dartmouth Business Center, Suite 3
34382 Carpenter's Way
Lewes, DE 19958

James P. Sharp, Esquire
Moore & Rutt, P.A.
122 W. Market Street
P.O. Box 554
Georgetown, DE 19947

RE: *Gannos, LLC, v. Sussex County Board of Adjustment, et. al.*
*C. A. No. S15A-12-002 ESB*

Dear Counsel:

This is my decision on the appeal filed by Gannos, LLC, of the Sussex County Board of Adjustment's decision to grant a special use exception and variances for a billboard to be located on a property owned by 19366 Coastal Highway, LLC ("Applicant"). The Applicant is the owner of a parcel of property located on the southbound side of Delaware Route 1 at 19366 Coastal Highway, Rehoboth Beach, Delaware. The Applicant filed with the Sussex County Board of Adjustment an application for a special use exception to erect a billboard on its property and for five variances related to the billboard. Gannos is the owner of the Rehoboth Marketplace, a shopping center which sits immediately west of the Applicant's property. Gannos is opposed to any modification to the Applicant's existing billboard. After a hearing

on the application, the Board approved the application for a special use exception and the five variances with the only change being to the square footage variance. Gannos now appeals the Board's decision to this Court.

## The Board Hearing

The Board held a public hearing on the application on August 3, 2015. Present at the hearing for the Applicant were David Hutt, Esquire, and Patricia and James Derrick, members of the Applicant. Present for Gannos, LLC, were Richard Berl, Esquire, and Gregory Fisher, the property manager for the shopping center.

Hutt presented the application. Hutt told the Board that the Applicant wanted to replace an old billboard. The Applicant's property is zoned commercial and currently houses a billboard, the Sea Shell Shop, a miniature golf course, and a parking lot. The property is triangularly shaped and the topography is unusual in that the Sea Shell Shop sits up high on the property while the billboard sits on one of the lowest points of the property. A Sussex County pump station is located immediately north of the property and sits on higher ground than where the billboard sits. The existing billboard consists of telephone poles and plywood, and is approximately 500 square feet. The Applicant is seeking to replace the existing billboard with a steel monopole structure.

Thomas and Patricia Derrick purchased the property in 1993. At the time of

the 1993 purchase, a billboard was already on the property and located in the same area. In 1995, the Derrick's filed an application to modify the billboard, which was granted by the Board. In 2010, the property was transferred to the Applicant.

During the hearing Hutt addressed both the standards for granting a variance and a special use exception. The Applicant sought (1) a variance of 42 feet from the side-yard setback requirement, (2) a variance of 89 feet from the separation distance requirement from another billboard located across Route 1, (3) a variance from the separation distance requirement from public lands, (4) a variance of six feet from the height requirement, and (5) a variance of 276 feet per side from the maximum square footage requirement. In his presentation for the special use exception, Hutt told the Board that the proposed billboard would not substantially adversely affect the uses of adjacent and neighboring properties because (1) there is an existing billboard on the property in the same location, (2) the replacement of the existing billboard is consistent with the surrounding highly-developed commercial area of Route 1, and (3) the proposed billboard is consistent with other replacement billboards that have been brought before and approved by the Board.

Berl spoke on behalf of Gannos. Gannos submitted a letter of objection signed by the owners or store managers of the tenants of the Rehoboth Marketplace. The letter claims that the proposed billboard will block the view of its main pylon sign

heading north on Route 1 and it will block the view of the shopping center from Route 1. Gannos believes this will result in a loss of customers for the stores in the shopping center. Gannos stated that because many of the leases in the shopping center expire this fall, some of its tenants may look for properties that are closer to Route 1 and possess a greater roadside exposure. Gannos argues that the change in the billboard would potentially affect the uses of adjacent properties in an adverse manner. Gannos did acknowledge that everyone in the shopping center has gotten used to the current billboard. Gregory Fisher affirmed that Berl's statements to the Board were correct. At the conclusion of the hearing the Board voted to table the application until its meeting on October 5, 2015.

The Board revisited the Application at its meeting on October 5, 2015, during which time the Board members discussed the arguments raised by the parties at the initial hearing. The Board discussed the height of the billboard in depth and found no problem with the height. The Board discussed its concern about the size of the variance for the additional square footage of the billboard. Ultimately, the Board denied the extra square footage but allowed the Applicant to keep the proposed billboard the same size as the existing one. The Board unanimously approved the special use exception under Sussex County Code §115-210 and the five variances under Sussex County Code §115-211(B), with the exception being a reduction in the

square footage variance. The Board issued its written decision on November 17, 2015.

## STANDARD OF REVIEW

The standard of review on appeals from the Board of Adjustment is limited to the correction of errors of law and a determination of whether substantial evidence exists in the record to support the Board's findings of fact and conclusions of law.[1] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[2] If the Board's decision is supported by substantial evidence, a reviewing court must sustain the Board's decision even if such court would have decided the case differently if it had come before it in the first instance.[3] "The burden of persuasion is on the party seeking to overturn a decision of the Board to show that the decision was arbitrary and unreasonable."[4] "If the Board's decision is fairly debatable, there is not [an] abuse of discretion."[5] "In this

---

[1] *Janaman v. New Castle County Board of Adjustment*, 364 A.2d 1241, 1242 (Del. Super. 1976).

[2] *Miller v. Board of Adjustment of Dewey Beach*, 1994 WL 89022, *2 (Del. Super. Feb. 16, 1994).

[3] *Mellow v. Board of Adjustment of New Castle County,* 565 A.2d 947, 954 (Del. Super. 1988), *aff'd*, 567 A.2d 422 (Del. 1989).

[4] *Mellow*, 565 A.2d at 955.

[5] *Id.* at 956.

5

process, '[t]he Court will consider the record in the light most favorable to the prevailing party below.'"[6] In the absence of substantial evidence, the Superior Court may not remand the Board's decision for further proceedings, but rather, may only "reverse or affirm, wholly or partly, or may modify the decision brought up for review."[7]

## DISCUSSION

Gannos argues that the Board (1) did not follow the proper procedure in approving the special use exception, (2) erred in granting the special use exception, and (3) erred in granting the height and square footage variances. The Board gets its power from 9 *Del.C.* §6917. This section authorizes the Board to hear and grant variance requests.[8] The Sussex County Council enacted §115-210 and §115-211 of the Sussex County Code to implement 9 *Del.C.* §6917.

### I. Proper Approval

Gannos argues that the Board did not follow the proper procedure in approving the special use exception. Gannos argues that when Mr. Mills made the motion to

---

[6] *Holowka v. New Castle County Board of Adjustment*, 2003 WL 21001026, at *4 (Del. Super. April 15, 2003) citing *General Motors Corp. v. Guy*, 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991).

[7] 22 *Del. C.* § 328(c).

[8] 9 *Del.C.* § 6917(1).

6

approve the five variances he failed to mention the special use exception. In making the motion, Mr. Mills stated "[s]o the motion I would make is the variance of 42 feet from the side yard setback requirement, a variance of 89 feet separation distance from another billboard across Route 1, a variance for public lands, county pumping station which exists within 300 feet of the sign, a variance of 6 feet to allow the sign to be 31 feet high, and a variance of 180 square feet per square footage."[9] Directly after making the motion and prior to it being seconded by Mr. Workman, Mr. Mills explained his reason for making a motion to approve the five variances and the special use exception. Furthermore, after having the motion seconded, Mr. Callaway states "Thank you Mr. Mills. Okay. So we got a motion by Mr. Mills and a second by Mr. Workman that we approve case no. 11612, one, for the special use exception with the requested variances except for the 180-foot instead of 276; is that correct, Mr. Mills?"[10] Mr. Mills answered affirmatively, making his intent to include the special use exception in his motion clear.[11]

The record does not support Gannos' argument that the special use exception was not properly approved. In its written decision, the Board stated it reviewed the

---

[9] Transcript of Sussex County Council Meeting at 27 (October 5, 2015).

[10] *Id.* at 30.

[11] *Id.*

7

testimony and evidence presented at the public hearing and the public record and granted the special use exception after a finding that the sign would not substantially affect adversely the uses of neighboring and adjacent properties. The Board's own Rules dictate that it is the written decision that is controlling, not the oral vote. Rule 14.8 states "Following a decision by the Board on an appeal or application, a copy of the written decision shall be sent to the appellant or applicant, or the agent or attorney for the appellant or applicant. *Any oral discussion of or vote upon the application by the Board shall be deemed in the nature of preliminary deliberations to the rendering of a final written decision and only the written decision, as adopted by a majority of the Board, shall constitute a decision of the Board.*"(Emphasis added). The Board's approval of the special use exception is recognized in its written decision. As established by its own rules, the Board's written decision determined what was and what was not passed. The record fully supports the finding that the Board's approval process was not arbitrary or unreasonable, and any oral discussion on the application simply constituted preliminary discussions prior to the rendering of the final written decision. Procedurally, the Board's process was proper and free from legal error.

## II. Substantial Evidence

Gannos argues that the Board erred in approving the special use exception. Gannos argues that the Applicant failed to prove that the new billboard would not

substantially affect adversely the uses of neighboring and adjacent properties. In support of the special use exception, the Applicant stated (1) that a billboard already exists in the same location as the proposed billboard, (2) that the replacement billboard is consistent with the surrounding area as it is a highly developed commercial area, and (3) that the proposed billboard is consistent with other replacement billboards that take aging and obsolete billboards and replace them with safer and more aesthetically pleasing billboards.

In order to grant a special use exception the Board must find that "such exceptions will not substantially affect adversely the uses of adjacent and neighboring property."[12] Specifically, §115-210 states that "[i]n order to provide for adjustments in the relative location of uses and buildings, to promote the usefulness of these regulations and to supply the necessary elasticity to their effective operation, special use exceptions, limited as to locations described in this Article, and special yard and height exceptions are permitted by the terms of these regulations. The following buildings and uses are permitted as special exceptions if the Board finds that, in its opinion, as a matter of fact, such exceptions will not substantially affect adversely the uses of adjacent and neighboring property..."

In its decision the Board noted (1) that there is already a billboard in the same

---

[12] Sussex County Code §115-210.

9

location and no evidence was presented that the existing billboard had any substantial adverse effect on neighboring and adjacent properties, (2) the location is a well-traveled commercial zone with other billboards located in the area, (3) the new billboard would be a safety and aesthetic improvement from the current billboard, (4) that the proposed sign will meet Department of Transportation requirements, and (5) that the concerns presented by Gannos are general in nature and do not rise to the level of substantial evidence. The Board noted that some members of the shopping center had been tenants since 1989 and if an adverse effect from the billboard existed, then there would be evidence of it. The Board also determined that the shopping center's sign is visible from the South and was not convinced that the proposed billboard would have any effect of the views of the shopping center's sign. On discussing the view of the shopping center from the highway, Mr. Mills stated that he believed that the application has "no visual impact on the shopping center in that with certain – you know, before you even get to the property, you see the shopping center. You see its signage and so forth. You have the existing – I don't think it's going to block – in fact, it will probably block whatever shopping center – view to the shopping center less by raising it."[13] Mr. Workman stated that he didn't "think it's

---

[13] Transcript of Sussex County Council Meeting at 2 (October 5, 2015).

10

going to block any of those stores or anything else."[14]   The photographic evidence submitted into the record supports their statements.

The evidence in the record established that the current billboard has had no discernable impact on the shopping center.   The evidence before the Board demonstrates that the proposed billboard will be the same size as the one it is replacing and in the same location.  The only difference is that the proposed billboard will be six feet taller.   The evidence also establishes that the proposed billboard is consistent with the surrounding area and would be a safety and aesthetic improvement.  While it was not their burden, no specific evidence of adverse affects was presented by Gannos, presumably because none existed.   It is unrealistic to expect the Applicant to have to produce evidence of the hypothetical negative effects the proposed billboard would have on the shopping center, as Gannos appears to have suggested.  For example, Gannos argues that the new billboard could have an impact on which tenants renew their leases, but that information would be purely hypothetical at this point in time and it may not have anything to do with the proposed billboard.   In its brief, Gannos argues that the new billboard is going to be far more intrusive than the older one but there is no evidence in support of that allegation.   In fact, the photographs submitted into evidence disproves Gannos'

[14] *Id.* at 10.

11

claims. Gannos acknowledged that its tenants have also become accustomed to the current billboard so it is unclear how a modest increase in height would adversely affect the shopping center. If anything, the increase in height will allow passing motorists to see more of the shopping center. All of Gannos' claims are theoretical at best with no basis in fact. A review of the Board's decision demonstrates that it is based upon substantial evidence and free from legal error.

### III. Granting Variances for Height and Square Footage

Gannos argues that the Board erred in granting two of the five variances. Specifically, Gannos argues that the Board erred in granting the height and square footage variances because (1) the Applicant failed to demonstrate that the property cannot be reasonably used without the variances, and (2) the hardship in complying with the code is self-created.[15] The Board may, in its discretion, grant:

> A variation in the yard requirements in any district so as to relieve practical difficulties or particular hardships in cases when and where, by reason of exceptional narrowness, shallowness or other unusual characteristics of size or shape of a specific piece of property at the time of the enactment of such regulation or restriction or by reason of exceptional topographical conditions or other extraordinary situation or condition of such piece of property or by reason of the use or development of property immediately adjacent thereto, the strict application of each regulation or restriction would result in peculiar and exceptional practical difficulties to or exceptional hardship upon the

---

[15] The Court will not examine the other factors necessary for approval of a variance for error as they are not being challenged.

owner of such property. Such granting of variance shall comply, as nearly as possible, in every respect with the spirit, intent and purpose of this chapter, it being the purpose of this provision to authorize the granting of variation only for reasons of demonstrable and exceptional hardship as distinguished from variations sought by applicants for purposes or reasons of convenience, profit or caprice.[16]

Section 115-211(B) provides that the Board shall grant a variance only if five certain findings are made.

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of the Zoning Ordinance or code in the neighborhood or district in which the property is located.

(2) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance or code and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located and not substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum

---

[16] Sussex County Code §115-211(A)(1).

variance that will afford relief and will represent the least modification possible of the regulation in issue.

**A. Reasonable Use**

Gannos argues that the Board erred in granting the height and square footage variances because the Applicant is able to reasonably use the property without them. Gannos argues this is evidenced by the fact that the Applicant operates the Sea Shell Shop, a miniature golf course, and a seasonal ice cream shop on its property. The Board found that the evidence presented at the hearing indicates that the property is unique in terms of shape and topography. The Property is triangular in shape and uneven, as evidenced by the multi-level parking lot. The Board found that a billboard currently sits on the property in an area that is much lower than other portions of the property, and several feet lower than Route 1. Because of the location of the current billboard, the Board found that the Applicant is unable to construct a billboard that is the same height as other nearby billboards. The Board found that the unique shape of the property limits the placement and options for the billboard. The Board found that the current billboard is a wooden billboard that is in need of repair. Due to the uniqueness of the property, the Board found that it cannot be developed in strict conformity with the Sussex County Code. The Board found that the variances for height, shape, and location are necessary to enable the reasonable use of the property

14

as the variances will allow the new billboard to be constructed. The Board also found that the variance request for the height of the billboard is consistent with the spirit of the Sussex County Zoning Code. The Board was not convinced that the maximum square footage variance was the minimum necessary to afford relief. Rather, the Board found that a variance of 180 square feet per side would allow the Applicant to build a billboard the same size as the one it was replacing. The Board also found that the shopping center's sign is quite visible from the South and the proposed billboard should not have any effect on the views of the shopping center sign.

I have concluded that the Board properly found that the Applicant could not reasonably use the property without the variances. The Board properly considered the shape and topography of the property, the history of the billboard, the placement of the current billboard, the surrounding area, and the uniqueness of the lot in relation to the Sussex County Code. Gannos relies on *Village of Highway One*[17] for support, but in that case there was no preexisting billboard. That is a big difference from the current situation where the billboard already exists with its placement on the property several feet below the road level. Another big difference from *Village of Highway One* is that the applicant in that case was trying to go higher than the surrounding

---

[17] *The Village of Highway One v. Board of Adjustment of Sussex County*, 2015 WL 799536 (Del. Super. Feb. 23, 2015).

15

billboards and above the 25-foot height limit. The Applicant in this case is not trying to get permission to go higher than other nearby billboards. It is merely trying to go to the same height as the other billboards due to the fact its billboard sits at a lower elevation than the surrounding area. Gannos has failed to show that the Board's decision was arbitrary or unreasonable. The Board thoroughly reviewed the evidence and made its findings based upon that evidence. The Board's findings are based upon substantial evidence and free from legal error.

## B. Self-Created Difficulty

Gannos argues that any hardship faced by the Applicant in complying with the Sussex County Code was self-created. Gannos argues that the Applicant's need for a height variance is due to its own decision to place the current billboard in a low spot back in 1995 instead of interfering with existing improvements. Gannos also argues that the Applicant could comply with the size requirement but chooses not to do so for economic reasons. Gannos concedes that the portion of land where the billboard sits is unsuitable for other uses.

The Board found that the exceptional practical difficulty was not created by the Applicant. The Board found that the Applicant did not (1) create the shape or topography of the property, (2) place the billboard on neighboring lands, or (3) erect the existing billboard on the property. The Board also found that the existing

billboard needs repair and the replacement billboard will be safer and more aesthetically pleasing.

I have concluded that the Board properly found that the hardship faced by the Applicant was not self-created. The Board properly considered the history of the billboard, the condition of the billboard, and the shape and topography of the property in reaching its decision. In *Verleysen*, the Court stated a "self-imposed hardship exists where a party "[comes] to the restricted subject property with a particular unpermitted use in mind and mindful of the impossible area restrictions for that use." By contrast, a hardship is not self-imposed if it "result[s] from inherent and pre-existing characteristics" of the property."[18] When the Derrick's purchased the property in 1993, a billboard already existed on the property. In 1995, the Derrick's replaced the billboard, but kept it in the same location. The Applicant now seeks to replace the wooden billboard with a steel billboard, while keeping it in the same location. What the Applicant is not doing is attempting to place a billboard on its property for the first time. The billboard and its location pre-existed the arrival of the Derrick's and the Applicant as owners of the property. The Applicant's desire to continue to use the property as it existed when they purchased it is a problem that is intrinsically related to the property itself, and not one created by the Applicant.

---

[18] *Board of Adjustment of Sussex County v. Verleysen*, 36 A.3d 326, 332 (Del. 2012).

Gannos has failed to show that the Board's decision was arbitrary or unreasonable. The Board thoroughly reviewed the evidence and made its findings based upon the evidence. The Board's findings are based upon substantial evidence and free from legal error.

## CONCLUSION

The Sussex County Board of Adjustment's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ E. Scott Bradley*

E. Scott Bradley

ESB/sal
oc:  Prothonotary